**UNITED STATES of America,**

v.

**Bobbie E. MILLER, Defendant.**

**UNITED STATES of America,**

v.

**Jerry F. STASIO, Defendant.**

**UNITED STATES of America,**

v.

**Hector SALAS, Defendant.**

**UNITED STATES of America,**

v.

**Joseph CURRY, Jr., Defendant.**

**Nos. 73 Cr. 1112, 73 Cr. 1124, 73 Cr. 1126 and 73 Cr. 1128.**

United States District Court, S. D. New York.

Jan. 30, 1974.

---

Paul J. Curran, U. S. Atty., for plaintiff in No. 73 Cr. 1112.

Zedrosser, Legal Aid, for defendant in No. 73 Cr. 1112.

Paul J. Curran, U. S. Atty., by Asst. Fortuin, for plaintiff in No. 73 Cr. 1124.

Concannon, Legal Aid, for defendants in Nos. 73 Cr. 1124 and 73 Cr. 1126.

Paul J. Curran, U. S. Atty., by Asst. Hemley, for plaintiff in No. 73 Cr. 1126.

Paul J. Curran, U. S. Atty. by Asst. U. S. Atty. A. R. Kaufman, for plaintiff in No. 73 Cr. 1128.

M. Herman, New York City, Legal Aid, for defendant in No. 73 Cr. 1128.

## MEMORANDUM

FRANKEL, District Judge.

At least four men have been added in the past week to the long list of former postal employees branded as felons and sentenced in this court for stealing mail. These are not notorious or otherwise "newsworthy" people. Their names will not be in headlines. The press would normally pay no attention at all. The cases are "routine." No one will make movies from them.

It is deeply regrettable, however, that so little notice is given to such matters. Not regrettable, of course, for those who have been prosecuted and sentenced. The regret is for the community at large and, more poignantly, for the large roster of those who seem surely destined to be caught and brought here for sentencing in the future. A fundamental premise and supposed justification for punishing people is that this serves the aim of "general deterrence"—of warning and discouraging others who might otherwise stray across lines marked by the criminal law. If those subject to temptation are not apprised when the law's grim promises are kept, the hoped-for effect is diminished.

This memorandum upon sentencing is being filed, therefore, with the deliberate purpose of inviting some notice to the problems of embezzled mail and those who embezzle it.

The cases of the four men sentenced in the past week are sorrowful. These are not evil people, though they have committed crimes. They had worked for some years in the Post Office, at salaries that are perhaps less than a generous government would be paying. They faced daily temptations, getting to know which addressees were recipients of money or other things of value. Like almost all of us, they were probably TV-viewers, urged to yearn after material delights they could not have on their meager incomes.

These defendants, and an astonishing number of others, seem to have forgotten that the Post Office has, as it must, an extensive organization of personnel, equipment, and techniques for apprehending those in its employ who violate their trust and steal the mails they are supposed to deliver. (It may be that the postal authorities themselves are less assiduous than they might be in bringing these facts home to the affected people.) In any event, these defendants proceeded to embezzle. Three took quantities of envelopes they knew to contain money. The fourth took packages containing jewelry. All were watched after suspicion arose. All were caught in the act. The cases are depressingly standard in their facts.

The defendants have lost their jobs. They have brought disgrace to themselves and sorrow to their families. Because their crimes were deliberate, premeditated, and evidently repetitive, they have been given terms of confinement as well as supervised probation to follow. The terms are "short" from the viewpoint of those of us who are not locked up—four months in three instances and 30 days at a Community Treatment Center in the fourth, rather than the five-year maximum the court is empowered to impose.* Anyone who thinks, how-

---

* The variations result, of course, from differences in individual and family circumstances, duly indicated on the court's record, but unnecessary to recount here. This is not to overlook, however, that such discriminations among defendants reflect the most troublesome and debatable aspects of the sentencing power.

ever, will know without experiencing it what a long time a day (and a night) in prison can be. The severity of the sentences must also be viewed in light of the fact that most of us who sit in this court have tended in the great majority of these cases to grant probation. The four sentences here under discussion reflect a belief that such supposed leniency now seems to be misguided—serving neither the mass of postal workers exposed to temptation nor the public interest in the integrity of the mails.

It is the court's hope (and some steps are being taken to implement the hope) that at least those who work in the Post Office will hear of, and give heed to, the too typical cases herein recorded. The overwhelming majority who are honest may be reminded that their way is prudent as well as virtuous. More importantly, since none of us is immune to temptation, let all take note how idiotic it is to risk so much for so little.